# A. Y. McDONALD MANUFACTURING COMPANY v. L. LIMA AND ANOTHER.
## SAME PLAINTIFF v. L. N. BERGH AND ANOTHER.[1]

October 28, 1932.

Nos. 29,090, 29,091.

*Charles E. Chrisman* and *David R. Thomas,* for appellant.
*Fosnes & Rolloff,* for respondents.

[1]Reported in 244 N. W. 804.

OLSEN, J.

'Appeal by plaintiff in each of these two actions from the judgment entered therein. The court made separate findings of fact and conclusions of law in defendant's favor in each case. In each case there was a motion to vacate the findings and conclusions and to make findings of fact and conclusions of law in favor of plaintiff. The general motions for new trials state no grounds therefor and present no questions for review. The appeals raise the question of the sufficiency of the evidence to sustain certain findings of fact. By agreement of the parties the two cases were tried together.

Defendant A. G. Copping was a plumber and plumbing contractor at Montevideo, Minnesota. The plaintiff is a wholesale dealer in plumbers' supplies and goods in Minneapolis, Minnesota. Defendants Dr. L. Lima and Dr. L. N. Bergh are residents of, and each owns a residence in, Montevideo. In March and April, 1928, defendant Copping contracted separately with each of defendants Lima and Bergh to sell to and install in the residence of each of them a so-called electric kitchen sink. Copping then ordered the two sinks from plaintiff. Plaintiff filled the orders and shipped the sinks to Copping. The one for the Bergh home was there installed by Copping and the job completed about March 19, 1928. The installation of the sink in the Lima home was completed on April 20, 1928. It was soon discovered that these two sinks were defective, and Copping agreed to replace them. Orders for new sinks were then given by him to plaintiff, and the new sinks were furnished by plaintiff and installed by Copping in the Bergh residence about May 11, 1928, and in the Lima residence about June 12, 1928, in replacement for the defective ones theretofore installed. The new sinks were furnished and installed without additional charge to defendants Lima and Bergh. Lien statements were duly filed by plaintiff in each case on July 19, 1928, for the value of the new sinks so furnished.

■ The court made a number of findings in defendant's favor in each case which are here challenged as not sustained by the evidence. The court found that no lien could be claimed by plaintiff

for material furnished in replacement of defective material theretofore furnished; or, in other words, that the contract relation between the parties was completed and ended when the first defective sinks were installed, and that the furnishing of the new sinks as replacements did not extend the time for filing liens. We are unable so to hold. While the time for filing liens for the defective sinks first installed had expired when these liens were filed, we are satisfied that under our lien statute the plaintiff could, except as hereinafter stated, properly file and establish liens for the value of the new sinks within 90 days after such new sinks were furnished. The plaintiff could not claim or establish any lien for defective material which it had received back and accepted as such. Hence, if it could not claim a lien for the new material furnished in replacement, it would lose all right to any lien. No case in this court exactly in point on the facts has been called to our attention, but the following cases sufficiently sustain the conclusion reached. Johnson v. Gold, 32 Minn. 535, 21 N. W. 719; Scheible v. Schickler, 63 Minn. 471, 65 N. W. 920; Shaw v. Fjellman, 72 Minn. 465, 75 N. W. 705; Minneapolis Tr. Co. v. G. N. Ry. Co. 74 Minn. 30, 76 N. W. 953. We'note general statements to the contrary in some cases from other jurisdictions but do not deem such statements controlling.

■ Respondents contend that plaintiff was a mere dealer who sold to and on the personal credit of Copping common articles of merchandise generally kept in the market, and that Copping so sold these sinks to Lima and Bergh. The evidence, as we view it, sufficiently shows that Copping was a contractor in these matters and that plaintiff was a materialman who furnished these items to him. That the sinks were so attached to the buildings as to become lienable fixtures as against the owners is not seriously disputed.

■ The trial court found that plaintiff had received payment for these sinks before it filed its liens. It appears that on June 11, 1928, the defendant L. N. Bergh paid to Copping by check $307.40 in full payment for the sink furnished to said defendant; that on the same day Copping deposited the check so received, with other money, in

his bank at Montevideo, and on the same day remitted by check or draft to plaintiff the amount received by him from Bergh, and other money. On June 16, 1928, defendant Lima paid to Copping, by check, the sum of $286.77 in full payment for the sink furnished to said defendant. Copping deposited this check in his bank at Montevideo, and on June 20, 1928, remitted by check to plaintiff the amount so received from Lima, and other money. Prima facie this would constitute payment to plaintiff. The evidence on the part of the plaintiff is that Copping did not accompany these remittances with any directions as to how payments were to be applied; that Copping had two accounts with the plaintiff, one an old account and one a current account, and that plaintiff applied these payments on the old account. If this was all that the evidence showed, the rule might well apply that the payments were properly credited on the old account. L. J. Mueller Furnace Co. v. Burkhart, 149 Minn. 68, 182 N. W. 909; Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291. But plaintiff's credit man and office manager was called as a witness by plaintiff and testified in substance that at the time Copping's account was divided into an old and a current account, it was agreed by plaintiff that Copping was to take care of the new account, the current account, so as to get the cash discount. Copping said he would take care of the current account and get credit for the cash, or 30 days' discount. Plaintiff so understood and agreed. In that situation we think it was plaintiff's duty to apply current remittances on the current account without any further directions from Copping. When so applied, the payments made paid up the current account.

The evidence sustains the finding of the trial court that these lien claims were paid to plaintiff before the liens were filed. That finding sustains the court's conclusions of law.

The only ruling on evidence, excepted to by plaintiff, if erroneous, was not important or prejudicial.

The two judgments are affirmed.